# OPINIONS OF THE JUSTICES.

## Opinions of the Justices to the House of
## Representatives.

*Constitutional Law*, Legal voters, Separation of powers, Equal protection
of laws, Initiative, Councillor districts. *General Court. Words*, "Legal
voters," "Summary."

Respecting the term "legal voters" in a proposed initiative amendment
to the Massachusetts Constitution providing for a reduction of the
size of the House of Representatives, for retention of the size of the
Senate, for an apportionment of representatives and senators on
the basis of "legal voters," and for the repeal of arts. 21 and 22 of the
Amendments, as amended by art. 71 thereof, and stating that "A
legal voter is a person who may claim the right to vote under the
provisions of" art. 3 of the Amendments, and not clearly indicating
that any change was intended in the meaning of "legal voters" from
that of registered voters attributed to that term in *Opinion of the
Justices*, 247 Mass. 583, a majority of the Justices were of the opinion
that no change of meaning of that term was intended by the pro-
ponents of the proposed amendment. [796] Kirk, J., dissenting.
Spiegel, J., dissenting.

The taking of a census of the inhabitants of each city and town, in a
manner to be determined by the Secretary of the Commonwealth,
and the special listing to be made of the name and residence of each
"legal voter," as contemplated by a proposed initiative amendment
to the Constitution of Massachusetts providing for an apportionment
of representatives and senators on the basis of "legal voters," would
involve no judicial or quasi-judicial determination by the census taker
and no violation of art. 30 of the Declaration of Rights. [796–797]

In answer to a question by the House of Representatives as to whether a
pending proposal for an initiative amendment to the Massachusetts
Constitution would constitute a violation of the Fourteenth Amend-
ment to the United States Constitution for the reason that it provided
for the apportionment of the Commonwealth into representative,
senatorial and councillor districts on the basis of "legal voters"
instead of population, the Justices declined to add to what was said
in *Opinion of the Justices*, 353 Mass. 790. [797–798]

Respecting a proposed initiative amendment to the Massachusetts Con-
stitution, a majority of the Justices were of opinion that a summary
by the Attorney General enabled the signers of the initiative petition
and the voters to understand the proposed amendment and complied
with the requirement of "a fair, concise summary" stated in art. 74,
§ 1, of the Amendments, where the summary treated with the major
features of the proposed amendment, namely, a reduction in the size
of the House of Representatives, retention of the size of the Senate,
restriction of one representative to a district, contiguity of representa-

tive districts containing "as nearly as may be an equal number of
legal voters," appointment of a special redistricting commission, the
effective date of the redistricting by it, and a provision for judicial
review of the apportionments made by it, notwithstanding that the
summary failed to indicate minor matters dealt with in the proposed
amendment, namely, a substantial change in the residency qualifica-
tions for a representative, removal of the requirement of five years
inhabitancy in the Commonwealth for a senator and for a councillor,
and elimination of the eligibility of a citizen for election as a councillor
from a district in which he is not a legal voter. [798–801] Kirk, J.,
dissenting. Spiegel, J., dissenting.

Respecting a provision in a proposed initiative amendment to the Massa-
chusetts Constitution for arrangement of councillor districts by the
Legislature on the basis of senatorial districts created by a special
redistricting commission to be established by the amendment, which
would constitute a change from arrangement of councillor districts by
the Legislature on the basis of senatorial districts divided by the
Legislature itself as set forth in art. 16 of the Amendments, it was
the opinion of the majority of the Justices that the change would
result in a minor inconsistency of constitutional provisions if the pro-
posed amendment should be adopted, that the arrangement of coun-
cillor districts as specified in the proposed amendment would control,
and that the petition for the proposed amendment was in proper form,
notwithstanding that the title of the House bill containing the pro-
posed amendment and the summary thereof prepared by the Attorney
General failed to mention such change. [801–802] Kirk, J., dissent-
ing. Spiegel, J., dissenting.

On February 23, 1970, the Justices submitted the follow-
ing answers to questions propounded to them by the House
of Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court
respectfully submit their answers to the questions set forth
in an order adopted by the House on January 27, 1970, and
submitted to the Justices on February 3, 1970.

The questions relate to a pending proposed amendment
to the Constitution of the Commonwealth, which was
introduced in the General Court by an initiative petition,
printed as House Doc. No. 300 of the year 1969, entitled,
"An Initiative Amendment to the Constitution providing

for the reduction of the size of the House of Representatives
to One Hundred and Sixty Members and providing for a
Decennial Division of the Commonwealth into Representa-
tive and Senatorial Districts," a copy of which, submitted
with the order, is set forth in Appendix A.

The proposal was originally submitted as an initiative
petition to the Attorney General "not later than" August 2,
1967, and received the certificate of the Attorney General
as to its proper form for submission to the people. The
petition, having received the requisite number of signatures,
was transmitted to the General Court on January 3, 1968.
Pursuant to art. 48 of the Amendments, on June 5, 1968,
the proposal seasonably was laid before a joint session of
the two houses at which it received the affirmative votes of
more than one fourth of all the members elected and was
thereupon referred "to the next General Court" for its
action.

The proposal provides for dividing the Commonwealth
into 160 representative districts "which shall be compact
and contiguous, and each of which shall contain, as nearly
as may be, one one hundred and sixtieth of the legal voters
of the commonwealth; and one representative shall be
elected from each district so created" (lines 55–59).

The order is preceded by four pages of recitals, twenty-
one in number, which appear in Appendix B. The recitals
20 and 21, respectively, are that there exists grave doubt (1)
as to whether the pending proposal is properly before the
General Court pursuant to art. 48 and (2) as to the
constitutionality under the Constitution of the United
States of the proposal if submitted to the people and
approved by them.

The questions are:

"1. Would the pending proposal for an initiative
amendment to the Constitution of the Commonwealth, if
submitted and approved by the people constitute a
violation of the Fourteenth Amendment to the United

States Constitution for the reason that it provides for the apportionment of the Commonwealth into representative, senatorial and councillor districts on the basis of legal voters instead of population?

"2. Is the matter contained in the pending proposal properly before the General Court pursuant to the provisions of Article XLVIII of the Amendments to the Constitution of the Commonwealth for the reason that the summary fails to indicate—

"(a) That residency qualifications for a representative are substantially changed?

"(b) That the requirement of five years inhabitancy in the commonwealth for a senator and for a councillor is removed?

"(c) That the eligibility of a citizen for election as a councillor from a district in which he is not a legal voter is eliminated?

[This question is contradictory. In order to make answer we assume that the words "for the reason" should be "notwithstanding."]

"3. Is the matter contained in the pending proposal properly before the General Court pursuant to Article XLVIII of the Amendments to the Constitution of the Commonwealth in view of the fact that the summary does not contain the sum and substance of the subject matter of the proposed amendment inasmuch as it fails to indicate that the duties of the General Court relative to the arrangement of councillor districts is changed so as to cause a conflict between the proposed initiative amendment and Article XVI of the Amendments to said Constitution?

[This question also is contradictory. In order to make answer we assume that the words "in view of" should be "notwithstanding."]

"4. If the initiative amendment were submitted to the people and approved by them, would the councillor districts be arranged by the General Court under said

Article XVI on the basis of senatorial districts as established by the special commission provided for in the pending proposal for an initiative amendment and, if so, is the petition in proper form for submission to the people in view of the fact that it fails to indicate this constitutional change?

[This question also is contradictory. In order to make answer we assume that the words "in view of" should be "notwithstanding."]

"5. Is the pending proposal properly before the General Court and for submission to the people notwithstanding its certification by the Attorney General to be in proper form both as to the petition and its title, when in fact the title and summary gives [sic] the voter no indication of substantial changes in the present Constitution, and the petition itself is ambiguous and in conflict with various articles and sections of the said Constitution without any provision for amendment or repeal of such articles or sections?

"6. The proposed amendment in lines 13 to 15, inclusive, defines a legal voter as follows: 'A legal voter is a person who may claim the right to vote under the provisions of Article III of the Articles of Amendment.' Does the inclusion of this definition in the proposed amendment change the meaning and scope of the term 'legal voter' as presently appearing in the Constitution of the Commonwealth as presently defined by your Honorable Court (see Opinion of the Justices 247 Mass. 583)?

"7. If the answer to the preceding question (No. 6) is in the affirmative does the failure to mention such change in the summary render the pending proposal invalid as to form?

"8. Is the term 'legal voter' as defined in the pending proposal sufficiently clear so as to permit the taking of an accurate census expeditiously, without confusion, and without requiring the census taker while in the exercise of an executive function to make a judicial or quasi-judicial

determination in each case in violation of Article XXX of the Articles of Amendments to the Constitution of the Commonwealth?"

[This is an obvious reference to art. 30 of the Declaration of Rights, which deals with the separation of powers.]

The questions divide themselves into four classes: (1) The propriety of using the term "legal voters" as the basis for the apportionment of representative, senatorial, and councillor districts instead of population. (2) The validity of the summary to accompany the initiative petition as certified by the Attorney General. The summary and certificate are in Appendix C. (3) Inconsistency between the proposed amendment and other provisions of the Constitution. (4) A supposed violation of art. 30.

Question 1 is in the first class described above, which raises the subject of the overriding effect of the Fourteenth Amendment upon the proposal because of the use of the term "legal voters" instead of "population." Questions 6 and 8 may be conveniently considered with the first class. Question 6 has to do with the effect of the proposal upon the term "legal voters" as presently appearing in the Constitution and discussed in *Opinion of the Justices*, 247 Mass. 583.

The material language of the proposed amendment (lines 13–15) is: "A legal voter is a person who may claim the right to vote under the provisions of Article III of the Articles of Amendment." Article 3 of the Amendments provides: "Every citizen of twenty one years of age and upwards, excepting paupers and persons under guardianship who shall have resided within the Commonwealth one year, and within the town or district in which he may claim a right to vote, six calendar months next preceding any election of Governor, Lieutenant Governor, Senators or Representatives . . . shall have a right to vote in such election . . . ."

In *Opinion of the Justices,* 247 Mass. 583, in 1924, answers were submitted to questions inquiring as to the meaning and scope of the term "legal voters" in arts. 21 and 22 of the Amendments. There the Justices said (page 585): "Those two articles cover the taking the census, the establishment of the number of members of the House of Representatives and of the number of members of the Senate, and the manner of apportionment of the members of each branch of the General Court among and between the several districts according to the relative number of legal voters therein. The first two sentences of these articles are the same and are in these words: 'A census of the legal voters of each city and town, on the first day of May, shall be taken and returned into the office of the secretary of the commonwealth, on or before the last day of June . . . [1857]; and a census of the inhabitants of each city and town in . . . [1865], and of every tenth year thereafter. In the census aforesaid, a special enumeration shall be made of the legal voters; and in each city, said enumeration shall specify the number of such legal voters . . . .' The rest of article 21 of the Amendments provides for the method of apportionment of the two hundred and forty members of the House of Representatives on the basis of the special enumeration thus required, among the counties and districts of the Commonwealth. The rest of article 22 of the Amendments provides the method of apportionment of the forty members of the Senate on the same basis among the senatorial districts. Neither of these articles specifies the qualifications of 'legal voters.' Those are found in other provisions. The qualifications of voters as now fixed by the Constitution are that every citizen of the Commonwealth, man or woman, of twenty-one years of age and upwards . . . [with exceptions not presently important] who has resided within the Commonwealth one year and within the town or district in which he [page 586] claims a right to vote six calendar months next preceding the election . . . [with exceptions and requirements not here important].

shall have a right to vote. . . . The Constitution has made no express provision for the ascertainment of those who possess the qualifications prerequisite for voting. Manifestly such an ascertainment must be made before the franchise can be exercised in an orderly and expeditious fashion. There must be an examination of the demands of persons claiming to possess the constitutional qualifications to vote, a sifting out of those who in truth possess those qualifications and a separation of those thus qualified from others who lack such qualifications [page 587]. The names of those thus found to be qualified must, as a practical matter, be listed and arranged so that elections may be conducted with such speed as to enable all the large numbers of voters to exercise their franchise in a reasonable time and under proper conditions. It is within the jurisdiction of the Legislature to make suitable and wholesome laws upon this subject. . . . The inevitable consequence of these settled propositions is that no one is entitled in fact and in law to vote unless he possesses all the qualifications required by the Constitution, and has complied with all reasonable regulations imposed by the General Court to prove his possession of those qualifications and to cause his name to be put on the voting list. While the Legislature cannot change in any particular the qualifications required to enable one to vote, it may make reasonable rules and regulations for ascertaining those who possess such qualifications. Such rules and regulations must be observed before one can become a legal voter under the Constitution.

"Therefore one is not a legal voter unless he possesses all the constitutional qualifications required to entitle one to be a voter and unless also he has become registered as a voter in accordance with the statutes. . . . Legal voters in the natural meaning of the words signify those who can at any moment go to the place of election provided for the district [page 588] of their residence and as of right cast their votes . . . . Those words are used in the Constitution in their natural signification."

Stated in full the answers were the following:

"First. The meaning and scope of the term 'legal voters' in articles 21 and 22 of the Amendments are the voters who possess the qualifications prescribed by the Constitution for voters and who have complied with statutory requirements so that they may lawfully cast their votes at an election.

"Second. 'Legal voters,' as used in the same articles of Amendments, mean under the present statutes those persons, who, possessing the constitutional qualifications to become voters, have proved them by taking the necessary steps to become duly recorded on lists of registered voters of the several cities and towns.

"Third. The General Court in providing for the enumeration of legal voters may define those words to mean citizens of the Commonwealth qualified to vote under the Constitution who have complied with the laws so that their names are duly recorded on lists of registered voters of the several cities and towns. The General Court in making such definition would not change in any respect, the meaning of those words as found in articles 21 and 22 of the Amendments to the Constitution, but would thereby declare their signification in view of existing valid statutes."

Apportionment based upon "legal voters" is presently authorized in the Constitution of the Commonwealth, arts. 21 and 22. It is but natural to expect that such basis should be carried along in the proposed amendment which repeals arts. 21 and 22, as amended by art. 71. See House No. 300 (lines 55–59). Should the court which is empowered to make final determination of questions under the Federal Constitution conclude that the "legal voters" provision in the proposed amendment is invalid, the same provision in arts. 21 and 22 would be equally invalid. In that event each could be disregarded and appropriate legislation enacted which would be consistent with what that court might eventually decide. As was said in *Opinion of the Justices,* 353 Mass. 790, 799, "If . . . a State constitutional provision is violative of the Constitution of the United States and,

therefore, void, legislation may be enacted disregarding the void provision. See *Opinion of the Justices,* 234 Mass. 597, 607.''

The effect of the words of the Justices in the foregoing necessarily lengthy quotation from 247 Mass. was to crystallize the meaning of "legal voters" in art. 3 of the Amendments as describing registered voters. The phrase in art. 3 now continues in all pertinent respects as in 1924 when the *Opinion of the Justices* in 247 Mass. was transmitted. The reference in art. 3 now as then means a citizen of at least twenty-one years of age "who shall have resided within the Commonwealth one year, and within the town or district *in which he may claim a right to vote,* six calendar months," etc. (emphasis supplied). The designation in House No. 300, of a "legal voter" as one who "may claim a right" under art. 3, permits at least two possible interpretations. The language may adopt the same meaning as those identical words in art. 3. The language may refer to persons who meet the stated qualifications specifically set out in art. 3, regardless of whether they in fact register as voters. In the absence of clear indication that the designation in House No. 300 was intended to change the effect hitherto given to the term "legal voter" we conclude that no change of meaning was intended.

To question 6 we answer, "No." In view of this negative answer, no answer is required to question 7.

Question 8, which is in the fourth class, inquires whether "legal voter" is sufficiently clear to permit an accurate census to be taken expeditiously "without requiring the census taker . . . to make a judicial or quasi-judicial determination in each case in violation of" art. 30 of the Declaration of Rights. The takers of the annual listing under G. L. c. 51, § 4, make no judicial or quasi-judicial determination. They ask questions and record the information given in reply. Nothing they do amounts to a decision that a person is or is not a citizen, or that he is or is not eligible to register to vote. The census contemplated by the

proposed amendment involves no change in these respects and calls for no judicial or quasi-judicial determination by the census taker. There is no violation of art. 30 of the Declaration of Rights.

To question 8, understood to mean art. 30 of the Declaration of Rights, we answer, "Yes."

In question 1 we are, in effect, asked to guess once more what the Supreme Court of the United States would decide as to the Fourteenth Amendment to the Federal Constitution. In October, 1967, in *Opinion of the Justices*, 353 Mass. 790, the Justices endeavored to deal with this highly uncertain matter. They were there confronted by a proposed bill which dealt with apportionment of representatives "so that each representative will represent an equal number of inhabitants, as nearly as may be" (page 791) but which gave the County of Dukes County and Nantucket County each one representative. The Justices said (page 793), "Constitutional doubt as to the power of a State to apportion its representatives is of very recent origin. The issue first arose out of the majority decision in *Baker* v. *Carr*, 369 U. S. 186, decided in 1962. . . . One cannot be sure what precise course the Supreme Court of the United States will adopt in future decisions in apportionment cases. That there is still uncertainty in many aspects of the subject is attested by the large number of cases with additional issues which have continued to arise." In considering what was described as a substantial variation among six counties "should apportionment be made on the basis of population rather than on legal voters" (page 798), the Justices said (page 799): "The deviation here considered would seem to be too great to be regarded as de minimis. We would expect this to be declared invalid. Accordingly, we are inclined to be of opinion that art. 21 is unconstitutional in so far as it requires apportionment on the basis of legal voters."

Subsequently, nothing on this precise point has been determined by the Supreme Court of the United States, the composition of which has somewhat changed. We know

judicially that each island county still has one representative.[1] See *Vigneault* v. *Secretary of the Commonwealth,* 354 Mass. 362. We do not add to what was said in *Opinion of the Justices, supra.* The difficulty of repeating a prediction as to the decision of the Supreme Court of the United States has not been simplified in the slightest degree.

Consistently with the answer in *Opinion of the Justices,* 353 Mass. 790, 799, we beg to be excused from further answering the first question.

The questions which fall in the second class purport to find difficulties in the Attorney General's summary. Question 2, read with recitals 14 through 20, seems to assume failure to comply with art. 48, The Initiative, II, § 3, as amended by art. 74, § 1, of the Amendments, which is in part, "The secretary of the commonwealth . . . shall print at the top of each blank a fair, concise summary, as determined by the attorney-general, of the proposed measure as such summary will appear on the ballot . . . ."

The second question objects (see particularly recital 19) that the summary fails to indicate that (a) the "residency qualifications for a representative are substantially changed"; (b) "the requirement of five years inhabitancy in the commonwealth for a senator and for a councillor is removed"; and (c) "the eligibility of a citizen for election as a councillor from a district in which he is not a legal voter is eliminated." The summary, while concise, nonetheless treats with the major features of the proposed amendment: (a) the reduction in the size of the House of Representatives; (b) the retention of the forty member Senate; (c) the restriction of one representative to a district; (d) the contiguity of representative districts containing "as nearly as may be an equal number of legal voters"; (e) the appointment of a special redistricting commission; (f) the effective date of the redistricting by the commission; (g)

---

[1] County of Dukes County, legal voters 3,823; population 5,948. Nantucket County, legal voters 2,233; population 3,714. See Legislative Manual 1969–1970, pp. 219, 226.

the provision for judicial review of the apportionments made by the commission.

What a summary should be has been largely covered in opinions of this court. In *Barnes* v. *Secretary of the Commonwealth,* 348 Mass. 671, 673–674, it was said, "Article 74 inserted 'fair, concise summary' in place of 'description.' In *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, the legislative history was outlined, and at page 243, it was said, 'Evidently, in view of the legislative history already stated, the intention was to relax the requirements which had been found implicit in the word description. Conciseness is emphasized in Amendment 74, and conciseness and completeness are often incompatible.' The purpose of the change is given in *Sears* v. *Treasurer & Recr. Gen.* 327 Mass. 310, 324, 'The word "description" had been interpreted as implying a very substantial degree of detail and had resulted in very long and cumbersome statements of details of proposed laws. See particularly *Opinion of the Justices,* 309 Mass. 631, 641–644. The change from "description" to "fair, concise summary" was designed to remedy this difficulty and must be given effect to that end. *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 241–243.' "

In the *Sears* case, *supra,* there was a one sentence summary of a measure which "fills . . . eight pages of rather fine print" (pages 324–325). It was said in that case with respect to "summary": "The word carries with it the idea that, however much the subject matter may be condensed, the sum and substance of it must remain. No doubt details may be omitted or in many instances covered by broad generalizations, but mention must be made of at least the main features of the measure. And the summary must be 'fair'; that is to say, it must not be partisan, colored, argumentative, or in any way one sided . . . ." That certain details have been omitted from the summary does not in our view invalidate it. Any other conclusion as to this summary would facilitate a return to the overelaborate

description which tended to confuse rather than to clarify.

The real substance of the proposal is contained in its title: "An Initiative Amendment to the Constitution providing for the reduction of the size of the House of Representatives to One Hundred and Sixty Members and providing for a Decennial Division of the Commonwealth into Representative and Senatorial Districts." Two years ago with reference to the same proposed amendment, we said that "the duty conferred upon the Chief Justice of the Superior Court to name the chairman and to appoint five of the fifteen member commission which is to make a division of the Commonwealth into representative and senatorial districts every tenth year . . . is but a detail of the project, and is quite apart from, and wholly incidental to, the chief purpose of the amendment, which is to bring about the reduction of the size of the House." *Cohen* v. *Attorney Gen.* 354 Mass. 384, 387.

In our view the Attorney General's summary complies with what were held to be the purposes of a "description" in *Evans* v. *Secretary of the Commonwealth,* 306 Mass. 296, 298–299, and repeated with application to a quoted "summary" in *Barnes* v. *Secretary of the Commonwealth,* 348 Mass. 671, 674, "The constitutional provision requiring a description to be determined by the Attorney General was intended to insure, first, that the signers of an initiative or referendum petition understand the law which they propose to submit to the voters, and, secondly, that the voters understand the law upon which they are voting."

The complaints set forth in the questions are minor matters when compared with the main purpose of the proposed amendment. The summary, if cluttered with detailed explanation and discussion, could no longer rightly be called a summary; it might fail of careful reading as a whole, and voters might not consider it of paramount importance. We think the summary falls within the *Bowe* case (*supra,* 320 Mass. 230), and the *Barnes* case (*supra,* 348 Mass. 671), rather than within the *Sears* case (*supra,* 327 Mass. 310). This is a matter of degree.

The voters, of course, will be provided with full information about the proposal. Article 48, General Provisions, part IV, of the Amendments (as amended by art. 74, § 4), requires the Secretary of the Commonwealth to transmit to each registered voter "the full text of every measure to be submitted to the people," with specified additional explanatory material. See also G. L. c. 54, § 53 (as amended through St. 1969, c. 575), and § 54.

To question 2, understanding it to be revised to read, "notwithstanding that the summary fails to indicate," etc., we answer, "Yes."

What we have said controls our answer to question 3. Understanding it to read, "notwithstanding the fact that the summary does not contain," etc., we answer, "Yes."

Question 4, which is in the third class, inquires whether, if the proposed amendment should be adopted, the councillor districts would be arranged by the General Court under art. 16 of the Amendments on the basis of the senatorial districts created by the special commission set forth in the proposal, "and, if so, is the petition in proper form for submission to the people in view of the fact that *it* fails to indicate this constitutional change" (emphasis supplied). We are not sure to what "it" refers. We agree that the proposal (see House No. 300, lines 44–76) would differ in that the Legislature would arrange the councillor districts on the basis of senatorial districts created by the new commission instead of on the basis of senatorial districts divided by the Legislature itself as set forth in art. 16 of the Amendments. To the extent that there is such an inconsistency, it is minor. In that event, the later provision would control. See *Bigney* v. *Secretary of the Commonwealth,* 301 Mass. 107; *Doherty* v. *Commissioner of Admn.* 349 Mass. 687, 690, and cases cited.

In so far as the question may inquire as to the insufficiency of the title of House No. 300, this is answered by the statement in *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 240–241: "There is still no requirement that a

proposed law shall bear a title (*Opinion of the Justices*, 309 Mass. 631, 638, et seq.), except such intimation as may be contained in Amendment 74, § 1. Nowhere is it provided that the title of a proposed law shall be descriptive of it to any particular degree, or wholly accurate so far as it is descriptive."

If question 4 is meant to embrace absence of a reference to this change in the summary, it is of trifling importance compared with the main objective of the proposal. See our discussion of question 2.

To question 4, understanding it to read, "notwithstanding the fact that it fails," etc. we answer, "Yes."

In answer to question 5, we refer to what we have said as to questions 2, 3, and 4. Beyond this we beg to be excused from answering question 5.

> RAYMOND S. WILKINS.
> JOHN V. SPALDING.
> R. AMMI CUTTER.
> PAUL C. REARDON.
> FRANCIS J. QUIRICO.

Inasmuch as I do not agree with several of the answers given by the majority of my esteemed colleagues I submit my own.

1. A majority of my colleagues say that if the proposed measure is adopted, the term "legal voters" will have in the amended Constitution the same meaning it now has, i.e. "registered voters." This interpretation will, I expect, be a revelation to many, and especially startling to those who filed briefs and conducted exhaustive studies in the belief that one of the main purposes of the proposed measure was to broaden the basis for determining the distribution of legislative seats. Only the brief filed on behalf of the Acting Governor did not make an independent argument on the apportionment (legal voter) issue. (I must confess that I had prepared an opinion on the hypothesis that the basis of

apportionment was one of the main purposes of the bill.) The interpretation by the majority must be faced. It will have one of two consequences: (1) If the views expressed in *Opinion of the Justices,* 353 Mass. 790, 799, are still valid ("legal voters" are "registered voters," and do not provide a permissible basis for the distribution of legislative seats), the proposed measure would incorporate into the Constitution an anachronism. Or (2), if current or pending opinions of the Supreme Court of the United States show that the opinion in 353 Mass. 790 is wrong (even though predicated on what the Supreme Court had apparently said with finalty) the sentence in lines 13 to 15 of the proposed measure is unnecessary. In either event, under the interpretation of the majority, the sentence in lines 13 to 15 accomplishes nothing and is meaningless.

Since the proponents, the opponents, the Supreme Court of the United States, and the Justices of this court are at the outset on different wave lengths, I respectfully request to be excused from answering question 1 further, although I shall refer to it in my answers to questions 5 and 6.

2. Question 2 of necessity has been reconstructed by the majority of my colleagues. The question is of profound importance and must be fully treated.

By way of preface to all that follows in these answers and by way of supplement to what has thus far been said I quote from Chief Justice Qua and ask that you bear always in mind that the initiative petition then before the court was for a proposed law and not "for a specific amendment of the constitution": "Massachusetts since 1780 has been governed by a written Constitution, wherein the various organs of government are enumerated and their powers defined. The people themselves and all branches of their government, legislative, executive, and judicial alike, are bound by it and owe to it implicit obedience. By that Constitution, until the adoption by the people in 1918 of art. 48 of the Amendments, all power to enact laws was vested in the Legislature. By that amendment provision

was made whereby *in a carefully prescribed manner and with certain precisely defined safeguards designed to make certain* that there should exist a wide popular demand, to prevent hasty action, to promote wide publicity, and *to acquaint the voters with the proposed laws* and with the arguments for and against them, laws could be enacted by direct popular vote, except in relation to certain 'excluded matters.' Since the people have themselves adopted the Constitution with its amendments for their government, they are bound by the provisions and conditions which they themselves have placed in it, and *when they seek to enact laws by direct popular vote they must do so in strict compliance with those provisions and conditions. . . . Failure to comply will mean that no valid law . . . [may be] enacted . . . .* Only by preserving this fundamental principle can constitutional government be preserved and orderly progress assured. The question whether or not the requirements of the Constitution have been observed . . . is a justiciable question to be determined in the last analysis by the judicial department of the government whenever the question arises in a proper proceeding . . . . And since the judges are bound by the Constitution and must see that its provisions and conditions are at all times faithfully observed, they must determine that question with sole reference to the facts of the case and the language of the Constitution and without the slightest regard to their own personal views as to the desirability or otherwise of the law involved. . . . *It would be astonishing and intolerable if the safeguards so carefully inserted in art. 48 could be disregarded . . . and so in effect turned into mere admonitions and recommendations*" (emphasis supplied). *Sears* v. *Treasurer & Recr. Gen.* 327 Mass. 310, 320–322.

The Initiative, Part II, § 3, as appearing in art. 74, § 1, of the Amendments now requires that a "fair, concise summary, as determined by the attorney-general, of the proposed measure," as it will appear on the ballot, shall be printed at the top of each blank furnished for the use of

signers of the initiative petition after the first ten; and art. 74, § 4, provides that such summary "shall be printed on the ballot." The sufficiency of a summary presents a justiciable question.

The most recent, and in my judgment, the clearest exposition of the principles which should guide a Justice in answering this justiciable question also was given by Chief Justice Qua in *Sears* v. *Treasurer & Recr. Gen.* 327 Mass. 310, 323–326. Much of what I say in answer to some of your questions is an application of those principles, as I understand them, to the document at hand.

The duty of passing upon the sufficiency of a summary is a serious one. No presumption is to be indulged in favor of a summary notwithstanding that it was, in the first instance, prepared by the Attorney General.

A summary is for the guidance and enlightenment of the voters, of the electorate at large. Its purpose is to give "to the voter who is asked to sign a petition, or who is present in a polling booth a fair and intelligent conception of the main outlines of the measure." The summary must be complete enough to accomplish that purpose. And it must be fair, that is, not one sided, either in statement or in omission to state. However much the "measure" may be condensed, "the sum and substance of it must remain" in the summary.

"Each instance must be judged by itself." The "nature of the proposed measure" is important. That is to say, whether the proposed measure is, for example, a law, subject to amendment or repeal by the ordinary processes of legislation (as was the case in all of the instances thus far considered by the court) or, on the other hand, is an amendment to the Constitution, lasting in its effect, altering the Frame of Government, and affecting the relation between the citizen and his government.

I turn to House No. 300.

The nature of the proposed measure is an initiative

amendment to the Constitution. For the first time the Justices are asked to give an opinion on the sufficiency of a summary of a proposed measure which would change the Commonwealth's "fundamental law," the solemn "compact" of "each Citizen with the whole people" (preamble). See *Opinion of the Justices,* 233 Mass. 603, 611; *Loring* v. *Young,* 239 Mass. 349, 376–377. In amendment as well as in origin the Constitution is the people's document. It is not within the province of the Justices, acting judicially, nor of the Attorney General, acting officially, to pass upon the wisdom of a proposed measure. At the joint session of the two Houses, however, the members thereof, subject to their preliminary decision whether House No. 300 is constitutionally infirm, have the duty to pass upon the wisdom and merits of the proposed measure, in the manner prescribed by art. 48 of the Amendments, Part IV, "Legislative Action on Proposed Constitutional Amendments," § 5, before the measure may be submitted to the people.

It is now my "serious duty" to advise you whether the substantive features of the proposed measure are sufficiently made known to the voters in the purported "summary." In the performance of this duty I shall not speculate on what "voters might not consider . . . of paramount importance." Nor shall I undertake to make a comparative evaluation of the importance of different provisions of the Constitution. In my judgment, all of the provisions of the Constitution are important. Stated in another way, no provision of the Constitution, affected by a proposed measure, is so unimportant that the substance of a measure which affects it may be omitted from the summary. To omit from the summary the substance of a measure which affects a constitutional provision is to ignore that provision.

It is my opinion that the "summary" of the proposed measure is grossly insufficient to fulfill its prescribed purpose. The "summary" does not give to the reader, be he layman or lawyer, the slightest hint or suggestion that the constitutional residence requirements for the office of

senator would be changed. The "summary" says not one word that would inform the reader that the constitutional residence requirement for the office of representative would be changed. The "summary" is completely silent about the proposed constitutional provision which would have the dual effect of limiting eligibility for the office of executive councillor (see *Bigney* v. *Secretary of the Commonwealth,* 301 Mass. 107), and of relaxing the residence requirements for it. These matters are of constitutional import: art. 21 (representatives), art. 22 (senators) and art. 16 (councillors) of the Amendments. These matters have been the subject of previous specific constitutional amendments. These matters are treated elliptically in the proposed measure. They are not mentioned at all in the "summary."

The "summary" is fatally defective in another respect. Nowhere in the "summary" does the word "repeal" appear. And yet the final paragraph of the measure expressly calls for the repeal of arts. 21 and 22 of the Amendments. Surely the people of the Commonwealth are entitled to be informed of this drastic change contemplated in the proposed measure. They would never learn of it from the "summary."

With reference to the foregoing, I quote directly from Chief Justice Qua in the *Sears* case at page 325, "All of these matters not mentioned in the 'summary' are the subject of express provisions of the measure itself. We cannot see how a purported summary that says nothing about them can be held to be 'fair.' " Or, may I add, sufficient.

Some of the briefs submitted to the Justices comment favorably on the brevity of the "summary." The proposed measure consists of 115 printed lines; the "summary" of thirty-two. The proposed measure, however, contains words of art and capsuled phrases not readily comprehended by all lawyers or by all judges. Brevity in such circumstances may be a dubious virtue. Indeed, Chief Justice Qua strongly intimated that in some instances, of which I believe this to be one, a summary to accomplish its purpose may neces-

sarily be longer than the measure itself "so that the voter may get a fair comprehension of what the [Constitution] will be if the measure is adopted." (*Sears* case, p. 326.) Brevity, if attained without loss of substance, is conciseness. But brevity, if achieved by the omission of substance, produces neither conciseness nor fairness nor a summary. I would thus characterize the thirty-two lines on page 6 of House No. 300 entitled "Summary."

I offer one further observation. The title and the "summary" emphasize one feature of the proposed measure: the reduction of the size of the House of Representatives. This is obviously the desire of the sponsors. But the total silence in the "summary" as to specific constitutional changes in the measure has denied to the subsequent signers and will deny to the voters, if the measure is submitted to them, "the sum and substance of the measure" to which they were and are entitled. The result is one-sidedness both in statement and in omission to state.

For the foregoing reasons it is my opinion that the "summary" in House No. 300 does not comply with the Constitution, and that accordingly the proposed measure should not be submitted to the people.

My answer to question 2, as reconstructed, is, "No."

3. For the reasons stated in my answer to question 2, and for the additional reasons to be stated in my answer to question 5, I answer question 3 (as also reconstructed), "No."

4. This question seems to me to be premature, and I respectfully request to be excused from giving answer. I refer to question 4 in my answer to question 5.

5. It is my hope that the first part of question 5 is adequately answered in the discussion of question 2. I should add that the word "amendment" appears but once in the proposed measure. It appears in the caption, "Article of Amendment." The word "amendment," however, appears once in each of the three paragraphs of the "summary." But nowhere in the "summary" or in the proposed measure is

there mention of whether the amendment is in addition to, or in substitution for, any existing provision of the Constitution. If adopted, therefore, there would arise questions of construction of the proposed measure. This would be a judicial responsibility, involving the resolution of important issues by such phrases as "necessary implication," "fair implication" and other devices which must be resorted to when a written instrument is ambiguous. An immediate example is the interpretation given by the majority to the words "legal voter" as it appears in lines 13 to 15 of the proposed measure. I have already referred to that interpretation in my answer to question 1. Another example of the kind of question which will require judicial resolution, if the measure is adopted, is your question 4. Thus the proposed measure, if adopted, may of necessity in the end be more the product of judicial construction than a clear and articulate expression of the people's will. I refrain from further comment lest it be said that I trespass upon your immediate and exclusive prerogative to give judgment on the intrinsic merit or lack of merit of the proposed measure.

6. In their answer to question 1, made clear by their answer to question 6, the majority say that no change in the meaning and scope of the term "legal voter" is made by the proposed measure. *I must say that I think a change in meaning was intended by the proponents.* The majority say that the intention, if intention there was, was ineffectually expressed. The conclusion reached by the majority concededly is a permissible one *at this time.* If, however, the same question were asked for the first time after the adoption of the proposal, it is seriously to be doubted that the same interpretation could be given, since "Words of the Constitution cannot be ignored as meaningless." *Opinion of the Justices,* 332 Mass. 769, 777. Once adopted, the court would be bound to consider the words, as part of the Constitution, in such a way as to give them effect and meaning in light of circumstances and conditions attending their adoption, including presumably the current nation-

wide concern and agitations over apportionment and the distribution of legislative seats. See, for example, *General Outdoor Advertising Co.* v. *Department of Pub. Works*, 289 Mass. 149, 158. The majority's interpretation eliminates apportionment as a viable and controversial feature of the measure. The majority's answers to Questions 6 and 7 parry a mortal thrust posed by these questions since the omission to state the mere fact of a change in the meaning of "legal voters" in the "summary" would demonstrably disclose its insufficiency. The parry averts the coup de grace. I respectfully submit, however, that for the reasons herein stated in answers to questions 2, 3 and 5 the "summary" is already fatally afflicted. I request to be excused from giving a categorical answer to question 6.

7. See answer to question 6.

8. As defined by the majority, I answer question 8, "Yes."

PAUL G. KIRK.


I agree with the majority of my colleagues in their request to be excused from answering question 1 and in their answer to question 8. I am wholly in agreement with the views expressed by Mr. Justice Kirk. I also agree with his request that he be excused from answering question 4 and with his answers to questions 2, 3, 5, 6 and 7.

Nevertheless, because I believe that the issue of the constitutional validity of the summary is of such transcendent importance, and that the precedent established by the majority might well extend beyond the proposed amendment to the Constitution, I feel impelled to make some additional observations.

Although the omitted provisions in the proposed measure do not appear to be inextricably interrelated with the provision reducing the size of the Legislature, and apparently as a consequence thereof are referred to by the majority as "minor," that does not justify the conclusion that they are

merely "details" of the measure capable of being totally ignored in the summary.

I do not think that the test is one of comparing the relative importance and interrelationship of the provisions. These should not be the determinative factors. There is a vast distinction between omitting a "detail" of a proposed amendment, and omitting provisions which, as one of the proponents of the constitutional validity of the summary admits in his brief, "obviously concern matters of substance." The decision in the case of *Sears* v. *Treasurer & Recr. Gen.* 327 Mass. 310, 324, it seems to me, raises the question whether provisions of substance can be omitted.

I do not believe that a "concise summary" of the provisions would "clutter" the summary as suggested by the majority. I perceive no reason why a summary including the omitted provisions could not be written concisely and lucidly without an unduly "detailed discussion and explanation." The summary peremptorily excluded provisions which I consider to be matters of substance.

Although it may be desirable to permit the voters to exercise their franchise in regard to whether the size of the Legislature should be reduced, it is of far greater importance that there be no violation of the provisions of the Constitution.

With all due respect to the majority of my colleagues, I suggest that the result reached by them is in the nature of empirical reasoning rather than legal deduction.

JACOB J. SPIEGEL.

AN INITIATIVE PETITION.

Pursuant to Article XLVIII of the Amendments to the Constitution of the Commonwealth, as amended, the undersigned qualified voters of the Commonwealth, ten in number at least, hereby petition for an initiative amendment to the Constitution of the Commonwealth, as follows:

AN INITIATIVE AMENDMENT TO THE CONSTITUTION PROVIDING FOR THE REDUCTION OF THE SIZE OF THE HOUSE OF REPRESENTATIVES TO ONE HUNDRED AND SIXTY MEMBERS AND PROVIDING FOR A DECENNIAL DIVISION OF THE COMMONWEALTH INTO REPRESENTATIVE AND SENATORIAL DISTRICTS.

ARTICLE OF AMENDMENT.

ARTICLE      . The senate shall consist of forty members, and the house of representatives shall consist of one hundred and sixty members, each of whom shall represent a single district created every tenth year in the manner provided in this article.

In the year nineteen hundred and seventy-two, and in the year nineteen hundred and eighty and every tenth year thereafter, a census of the inhabitants of each city and town shall be taken, in a manner to be determined by the secretary of the commonwealth, who may for this purpose contract with any federal, state or local agency, and a special listing shall be made of the name and residence on

January first of each legal voter. A legal voter is a person who may claim the right to vote under the provisions of Article III of the Articles of Amendment. Each special listing shall be the basis for determining the representative and senatorial districts for the ten year period beginning with the first Wednesday in the third January following said special listing; provided that such districts as are established following the special listing in the year nineteen hundred and seventy-two shall take effect on the first Wednesday in January in the year nineteen hundred and seventy-five and shall remain in effect until the first Wednesday in January in the year nineteen hundred and eighty-three.

It shall be the duty of the secretary of the commonwealth, on or before the first day in October in the year in which the special listing is made, to certify to the chief justice of the superior court, to the governor and to the general court the number of legal voters in each city and town and to each city and town the name and residence of each legal voter. Thereafter, no later than the first day of January of the following year, each city and town shall, if it contains more than twenty-five hundred legal voters, divide such city into wards and precincts or such town into precincts; and no precinct so created shall contain more than twenty-five hundred legal voters. No city or town shall be required to use the wards or precincts created under this Article for the purpose of legislative redistricting for its municipal elections. Each city and town shall, on or before January tenth in the year following the special listing, notify the secretary of the commonwealth, the chief justice of the superior court, the governor and the general court, of the boundaries of and the number of legal voters in such wards and precincts.

On January fifteenth of the year following the special listing, a commission of fifteen members shall be appointed and shall proceed to make a division of the commonwealth

into representative and senatorial districts subject to the provisions of this Article. Five members shall be appointed by the chief justice of the superior court, who shall name the chairman, five shall be appointed by the governor and five shall be appointed by the general court in such manner as they shall determine. The commission shall, before the fifteenth of July in the year following the special listing, divide the commonwealth into one hundred and sixty representative districts which shall be compact and contiguous, and each of which shall contain, as nearly as may be, one one hundred and sixtieth of the legal voters of the commonwealth; and one representative shall be elected from each district so created. The commission shall also, not later than the fifteenth of July in the year following the special listing, divide the commonwealth into forty senatorial districts which shall be compact and contiguous, and each of which shall contain, as nearly as may be, one fortieth of the legal voters of the commonwealth; and one senator shall be elected from each district so created. No precinct of fewer than twenty-five hundred legal voters shall be divided for the purpose of creating a representative or senatorial district; but if any city or town shall have failed to make proper division of its legal voters into precincts, the commission shall make such division.

The commission shall report to the secretary of the commonwealth, the general court and to each city and town the boundaries of the representative and senatorial districts, and the number of legal voters contained in each district, together with a name, number and other designation sufficient to identify each district.

The manner of calling and conducting the elections for the choice of representatives, senators and executive councillors shall be prescribed by law; but every representative, senator or executive councillor shall, for one year at least, immediately preceding his election, have been an inhabitant of the commonwealth, and shall be at the time of his

election a legal voter in the district for which he is chosen; and any such officer shall cease to represent said district when he shall cease to be an inhabitant of the commonwealth.

Original jurisdiction is hereby vested in the supreme judicial court upon the petition of any voter of the commonwealth, filed with the clerk of the supreme judicial court for the commonwealth to review the plan or any portion thereof.

If the supreme judicial court determines that the plan or portion thereof thus reviewed complies with this Article, it shall dismiss the petition and the plan or portion thereof shall become effective upon the date of the opinion.

If the supreme judicial court determines that the plan or portion thereof does not comply with this Article, the court may direct such action as may bring the plan or portion thereof into compliance with this Article and may direct the secretary of the commonwealth to draft a redistricting plan or portion thereof of the representative and senatorial districts. When the supreme judicial court shall have determined that a plan or portion thereof is in compliance with this Article, they shall file it with the secretary of the commonwealth, who shall make notification as required by this Article to the general court and to each city and town of the commonwealth.

Nothing in this Article shall be construed to limit the right of any person to seek judicial relief at any time in respect to any alleged infringement of his franchise by a division of the commonwealth into representative or senatorial districts, or of a city into wards and precincts or of a town into precincts.

Articles XXI and XXII of the Articles of Amendment, as amended by Article LXXI of said Articles of Amendment, are hereby repealed.

(First Ten Signers.)

JOHN R. BUCKLEY,
    754 Plymouth Street, Abington.
MICHAEL J. HARRINGTON,
    7 Beach Avenue, Salem.
FRANCIS W. HATCH, JR.,
    Preston Place, Beverly.
MARY B. NEWMAN,
    5 Willard Street, Cambridge.
JANET K. STARR,
    1 Tyler Road, Belmont.
CHANDLER H. STEVENS, JR.,
    3 Elm Brook Road, Bedford.
FREDERICK M. WHITNEY, JR.,
    600 Alden Street, Springfield.
Leon CHARKOUDIAN,
    17 Dearborn Street, Springfield.
CHARLES M. HAMANN,
    28 Temple Street, Belmont.
MARTIN A. LINSKY,
    10 Abbottsford Road, Brookline.

APPENDIX B.

[1.] *Whereas,* There is pending before the General Court under the provisions of Article XLVIII of the Amendments to the Constitution of the Commonwealth, relative to the Initiative, a certain proposal, which has been referred to the Committees on Rules of the two branches, acting concurrently, purporting to be a proposed amendment to the Constitution of the Commonwealth, introduced into the General Court by an Initiative Petition, printed as House Document No. 300 of the year 1969, entitled "An Initiative Amendment to the Constitution providing for the reduction of the size of the House of Representatives to One Hundred and Sixty Members and providing for a Decennial Division of the Commonwealth into Representative and Senatorial Districts", a copy of which is herewith submitted; and

[2.] *Whereas,* The said proposal was originally submitted as an initiative petition to the Attorney General of the Commonwealth on or before August 2, 1967 and received the certificate of the Attorney General as to its proper form for submission to the people on September 6, 1967; and, the initiative petition having received the requisite number of signatures, the said proposal was transmitted to the General Court on January 3, 1968; and

[3.] *Whereas,* Pursuant to said Article XLVIII on June 5, 1968 said proposal was seasonably laid before a joint session of the two houses at which it received the affirmative votes of more than one fourth of all the members elected and was thereupon referred to the next General Court for its action; and

[4.] *Whereas,* The said proposal provides for the dividing of the Commonwealth "into one hundred and sixty representative districts which shall be compact and contiguous, and each of which shall contain, as nearly as may be one one hundred sixtieth of the legal voters of the Commonwealth" and further defines "legal voter" as "a

person who may claim the right to vote under the provisions of Article III of the Articles of Amendment"; and

[5.] *Whereas,* Subsequent to the filling of the said proposal, which has not been amended and may not now be amended in accordance with the provisions of Article LXVIII, an Opinion of the Justices of your Honorable Court was rendered on October 31, 1967 (353 Mass. 790) considering several of the issues raised by decisions of the United States Supreme Court since the decision of *Baker* v. *Carr,* 369 U. S. 186 and specifically addressing itself to the use of the "legal voter basis" as opposed to the "population basis", which opinion was not available to the first ten signers to the initiative petition at the time of the drafting and submission of the initiative petition or to the subsequent signers of the initiative petition during a significant period of the time allotted for the obtaining of such signature; and

[6.] *Whereas,* Since the issue of legislative apportionment first arose in *Baker* v. *Carr,* 369 U. S. 186, the United States Supreme Court has intervened in many states to enforce the "Equal Protection Clause" of the Fourteenth Amendment to the United States Constitution in order that the vote of each man should not be unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of a state; and

[7.] *Whereas,* In the case of *Reynolds* v. *Sims,* 377 U. S. 533, the court held that the seats in both houses of a bicameral state legislature must be apportioned on a population basis, thus giving rise to the "one man, one vote" concept of apportionment; and

[8.] *Whereas,* Subsequently in the case of *Burns* v. *Richardson,* 384 U. S. 73, 93, it was held that an apportionment by *registered voters* satisfied the equal protection clause *but only because on the record it was to have produced a distribution of legislators not substantially different from that which would have resulted from the use of a permissible population basis;* and

[9.] *Whereas*, In requesting the Opinion of the Justices (353 Mass. 790) the Senate in the order then submitted to your Honorable Court in the year 1967 contained certain recitals indicating a legislative finding that there was a lesser ratio of *legal voters* to *population* in many areas of the Commonwealth attributable to various causes, including economic, sociological, and ethnic factors, by reason of which there is a lesser degree of political activity among adult citizens domiciled therein, particularly in certain wards in Boston and other large population centers in which the population is predominantly "non-white". Such lesser ratio in said city and in other heavily populated, congested cities would make it impossible to effect an equitable and fair share of *representation* by the use of the *legal voter basis* as against a *population basis*. It was found by the legislature in adopting that order that to use the *legal voter basis* would be to deny certain inhabitants of their share of representation. Your Honorable Court in that advisory opinion found this to be the case and held that apportionment of the House of Representatives on the basis of *legal voters* would be unconstitutional, that Article XXI of the Amendments to the Massachusetts Constitution in so far as it required apportionment on the *basis of legal voters* was in violation of the Fourteenth Amendment to the United States Constitution and therefore unconstitutional, and finally that the case of *Burns* v. *Richardson,* supra, did not apply in the Commonwealth, as the facts in that case "were clearly not the condition confronting us"; and

[10.] *Whereas*, The proposal with regard to the "census of inhabitants" to be taken under the proposal provides in part that, ". . . a census of the inhabitants of each city and town shall be taken . . . and a special listing shall be made of the name and residence on January first of *each legal voter* . . ." ". . . The commission shall . . . divide the commonwealth into one hundred and sixty representative districts . . . each of which shall contain, as nearly as may be, one one hundred and sixtieth of the *legal voters* of the

commonwealth . . . (and) divide the commonwealth into forty senatorial districts . . . each of which shall contain, as nearly as may be, one fortieth of the *legal voters* of the commonwealth . . ."; and

[11.] *Whereas,* The basis for districting, therefore is not *inhabitants* nor *registered voters* under the proposal, but *persons who are twenty-one years of age or over;* thus removing from consideration the population below the age of twenty-one, which can have the effect of unfairly diluting the representation in large family neighborhoods as against localities with small family units, and appears to be squarely in opposition to the one-man-one-vote decisions of the United States Supreme Court, supra; and

[12.] *Whereas,* The summary printed upon the petition for a constitutional amendment reducing the size of the House was prepared by the Attorney General, pursuant to the provisions of Section 1 of Article LXXIV of the Amendments to the Constitution which provides as follows:—"Section 3. Mode of Originating.—The secretary of the Commonwealth shall provide blanks for the use of subsequent signers, and shall print at the top of each blank a fair, concise summary, as determined by the Attorney General, of the proposed measure as such summary will appear on the ballot . . ."; and

[13.] *Whereas,* The summary printed upon the petition which was issued and signed by the voters consequently cannot now be changed for ballot use without giving rise to the question that even a small change invalidates the petition which the voters saw before them; and

[14.] *Whereas,* The said summary carries no indication of certain substantial changes in the inhabitancy or residency qualifications for the offices of representative, senator and executive councillor, as provided in the present Constitution in Article LXXI of the Amendments, to wit: "Every representative, for one year at least immediately preceding his election, shall have been an inhabitant of the district for which he is chosen, and shall cease to represent such district

when he shall cease to be an inhabitant of the Common-
wealth . . ." ". . . Each district shall elect one senator, who
shall have been an inhabitant of this commonwealth five
years at least immediately preceding his election . . ." ". . .
No person shall be eligible to the office of councillor who
has not been an inhabitant of the Commonwealth for the
term of five years immediately preceding his election . . .";
and

[15.] *Whereas,* The qualifications for the aforementioned
three offices *proposed by the pending amendment* are ". . .
every representative, senator or executive councillor shall,
for *one* year at least, immediately preceding his election,
have been an inhabitant of the *commonwealth,* and shall be
at the *time* of *his election* a legal voter in the district for
which he is chosen; and any such officer shall cease to
represent said district when he shall cease to be an inhabi-
tant of the commonwealth . . ."; and

[16.] *Whereas,* The requirement that a representative live
in the *district* for a *year* prior to election day is removed,
and the requirement that a Senator or Councillor live in the
Commonwealth for *five* years prior to election is removed
with the result that a candidate for any one of the three
offices could move into the Commonwealth from another
state in the November of the year prior to the election,
move into a district shortly before the election, and still
legally hold the office, if elected; and

[17.] *Whereas,* The proposed amendment changes the
present constitutional provision that a councillor need not
be a resident of his district (*Bigney* v. *Secretary of the
Commonwealth,* 301 Mass. 107) by requiring that he shall
be at the time of his election a legal voter in the district for
which he is chosen, and that this substantial change is not
mentioned in the summary; and

[18.] *Whereas,* The proposed amendment, by repealing
Article XXII of the Amendments to the Constitution which
in part provides that "The General Court shall, at its
first regular session after the return of each special enumer-

ation, divide the commonwealth into forty districts of contiguous territory," creates a conflict with Article XVI of said Amendments which requires the legislature to so arrange councillor districts that each district shall consist of five contiguous senatorial districts, *as they shall be from time to time* established by the legislature; and

[19.] *Whereas,* It would therefore appear that the summary does not contain "the sum and substance" of the subject matter of the proposed amendment. See *Sears* v. *Treasurer and Receiver General,* 327 Mass. 310, 324, in which case it was held that the voters are clearly entitled to be informed of the substantive changes, the proposed repeal of, and the substitute for existing constitutional provisions. This the said summary has not done! Neither the voters nor the signers of the petition can be expected to understand the law upon which they are voting if substantive changes are omitted from the summary (*Barnes* v. *Secretary of the Commonwealth,* 348 [Mass.] 671, 674); and

[20.] *Whereas,* Grave doubt exists as to whether or not the matter contained in the pending proposal is properly before the General Court pursuant to the provisions of said Article XLVIII; and

[21.] *Whereas,* Grave doubt exists as to the constitutionality under the Constitution of the United States of said proposal, if submitted to the people and approved by them; therefore be it

*Ordered,* That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the House of Representatives upon the following important questions of law:—

1. Would the pending proposal for an initiative amendment to the Constitution of the Commonwealth, if submitted and approved by the people constitute a violation of the Fourteenth Amendment to the United States Constitution for the reason that it provides for the apportionment of the Commonwealth into representative, senatorial and coun-

cillor districts on the basis of legal voters instead of population?

2. Is the matter contained in the pending proposal properly before the General Court pursuant to the provisions of Article XLVIII of the Amendments to the Constitution of the Commonwealth for the reason that the summary fails to indicate—

(a) That residency qualifications for a representative are substantially changed?

(b) That the requirement of five years inhabitancy in the commonwealth for a senator and for a councillor is removed?

(c) That the eligibility of a citizen for election as a councillor from a district in which he is not a legal voter is eliminated?

3. Is the matter contained in the pending proposal properly before the General Court pursuant to Article XLVIII of the Amendments to the Constitution of the Commonwealth in view of the fact that the summary does not contain the sum and substance of the subject matter of the proposed amendment inasmuch as it fails to indicate that the duties of the General Court relative to the arrangement of councillor districts is changed so as to cause a conflict between the proposed initiative amendment and Article XVI of the Amendments to said Constitution?

4. If the initiative amendment were submitted to the people and approved by them, would the councillor districts be arranged by the General Court under said Article XVI on the basis of senatorial districts as established by the special commission provided for in the pending proposal for an initiative amendment and, if so, is the petition in proper form for submission to the people in view of the fact that it fails to indicate this constitutional change?

5. Is the pending proposal properly before the General Court and for submission to the people notwithstanding its certification by the Attorney General to be in proper form both as to the petition and its title, when in fact the title

and summary gives the voter no indication of substantial changes in the present Constitution, and the petition itself is ambiguous and in conflict with various articles and sections of the said Constitution without any provision for amendment or repeal of such articles or sections?

6. The proposed amendment in lines 13 to 15, inclusive, defines a legal voter as follows: "A legal voter is a person who may claim the right to vote under the provisions of Article III of the Articles of Amendment". Does the inclusion of this definition in the proposed amendment change the meaning and scope of the term "legal voter" as presently appearing in the Constitution of the Commonwealth as presently defined by your Honorable Court (see Opinion of the Justices 247 Mass. 583)?

7. If the answer to the preceding question (No. 6) is in the affirmative does the failure to mention such change in the summary render the pending proposal invalid as to form?

8. Is the term "legal voter" as defined in the pending proposal sufficiently clear so as to permit the taking of an accurate census expeditiously, without confusion, and without requiring the census taker while in the exercise of an executive function to make a judicial or quasi-judicial determination in each case in violation of Article XXX of the Articles of Amendments to the Constitution of the Commonwealth?

WALLACE C. MILLS,
                                                      *Clerk.*

A true copy.
    Attest:

WALLACE C. MILLS,
                            *Clerk.*

APPENDIX C.

SUMMARY.

The proposed amendment to the constitution reduces the size of the House of Representatives from 240 to 160 members, each of whom shall be the representative of a single district. No change is made in the size of the Senate, now 40 members. Representative districts shall be compact and contiguous and, as nearly as may be, shall contain an equal number of legal voters based on a special listing thereof taken in connection with a census in 1972, in 1980 and in every tenth year thereafter. Senatorial districts shall be organized in a like manner.

The amendment further provides that the division of legal voters into representative and senatorial districts shall be made by a special commission of fifteen persons, five of whom shall be appointed by the Chief Justice of the Superior Court, who shall name the chairman, five by the Governor, and five by the General Court as it may determine. Not later than July 15 of the year following a special listing the commission shall divide the Commonwealth into the required representative and senatorial districts. This division shall be preceded by divisions made, not later than January 1 of the year following a special listing, by each city or town of its legal voters, if more than 2500, into wards and precincts as the case may be. No precinct shall contain more than 2500 legal voters and no precinct shall be divided for the purpose of creating a representative or senatorial district. The wards and precincts so created need not be used for municipal elections. The first districts created under the proposed amendment will take effect on the first Wednesday of January, 1975.

The proposed amendment also provides for review by the Supreme Judicial Court, upon the petition of any voter, of

the commission's division of the Commonwealth into representative and senatorial districts. On such review, the Court may order correction of any division of a representative or senatorial district that does not comply with the proposed amendment.

CERTIFICATE OF THE ATTORNEY GENERAL TO
ACCOMPANYING INITIATIVE PETITION.

I hereby certify that the accompanying "Initiative Petition" entitled "AN INITIATIVE AMENDMENT TO THE CONSTITUTION PROVIDING FOR THE REDUCTION OF THE HOUSE OF REPRESENTATIVES TO ONE HUNDRED AND SIXTY MEMBERS AND PROVIDING FOR A DECENNIAL DIVISION OF THE COMMONWEALTH INTO REPRESENTATIVE AND SENATORIAL DISTRICTS", signed by at least ten persons certified to be qualified voters of the Commonwealth, was submitted to me not later than August 2, 1967, which was the first Wednesday of August of this year.

I hereby certify that the measure contained in the foregoing petition and the title thereof are in proper form for submission to the people; that the measure is not, either affirmatively or negatively, substantially the same as any measure which has been qualified for submission or submitted to the people at either of the two preceding biennial State elections; that the petition contains only subjects not excluded from the popular initiative; and that such subjects are related or are mutually dependent.

Very truly yours,

ELLIOT L. RICHARDSON,
*Attorney General.*